```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                 STATESVILLE DIVISION
                    5:06CV51-V-2
                   (5:03CR37-14-V)
```

| | |
|---|---|
| **TROY DEAN BUSH,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   **O R D E R** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255, filed April 13, 2006 (document # 1); on the Government's Motion for Summary Judgment, filed August 21, 2006 (document # 11); on Petitioner's Traverse and Motion to Amend, filed October 27, 2006 (document # 16); on Petitioner's Motion for Judgment on the Pleadings and/or Motion Day, filed March 7, 2007 (document # 17); and on his Motion for Evidentiary Hearing, filed April 20, 2007 (document # 18).

For the reasons stated herein, Petitioner's Motion to Amend will be denied; his Motions for Judgment on the Pleadings and for Evidentiary Hearing will be denied; the Government's Motion for Summary Judgment will be granted; and Petitioner's Motion to Vacate will be denied.

1

# I. FACTUAL AND PROCEDURAL HISTORY

On August 26, 2003, a three-count Bill of Indictment was filed, charging Petitioner along with 14 others with certain drug trafficking crimes. However, Petitioner was named only in Count One which charged that he conspired with the others to possess with intent to distribute five kilograms or more of powder cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count One). (Case No. 5:03CR37-14-V, document # 3).

On September 20, 2004, the Government filed an Ex-Parte Motion explaining that Petitioner had returned a signed Plea Agreement to the prosecutor, but also seeking the appointment of replacement counsel for Petitioner on the basis of certain information which had come to the prosecutor's attention, including a report prepared by State Bureau of Investigation Detective C.A. Brackett. According to Detective Brackett's report, Petitioner contacted Brackett by telephone and stated that: (1) he wanted to cooperate with the Government's investigation; (2) he was displeased with his attorney's services and wanted to replace counsel, but could not afford to hire someone else; (3) counsel told him that two of counsel's friends (Butch Edmisten and David Flaherty) had inquired about statements which Petitioner made to law enforcement authorities; (4) Petitioner believed that counsel was sharing information from his case with Flaherty and Edmisten; (5) he also believed his attorney was representing him only so

that counsel could assess the information which federal authorities had against counsel and Flaherty; and (6) Petitioner asked for advice concerning how he should handle those matters. (See Case No. 5:03CR37-14-V, document # 222). The report further stated that Detective Brackett declined to advise Petitioner about his case, but told him he could seek help from another attorney.

The Government's Ex-Parte Motion further advised the Court that it recently had received information tending to corroborate Petitioner's statements; and that the Government had reason to believe that Petitioner would be requesting the appointment of replacement counsel.

In any event, on September 24, 2004, Petitioner's Plea Agreement was filed, thereby recording his promise to plead guilty to the conspiracy charge. (Case No. 5:03-CR-37-14-V, document # 224). The Agreement also reflects Petitioner's understanding that upon his conviction, he would face a statutory mandatory minimum term of ten years up to life imprisonment for his offense.

As for his specific conduct, the Plea Agreement sets forth the parties' stipulations that "[t]he amount of cocaine base that was known to or reasonably foreseeable by [Petitioner] was at least 150 grams but less than 500 grams"; that the corresponding "Base Offense Level" for the offense was 34; and that if

3

Petitioner met certain conditions, the Government would recommend a three-level reduction for his acceptance of responsibility.

Concerning his post conviction rights, the Agreement provides that Petitioner waived his right to challenge his conviction and/or sentence on any grounds except ineffective assistance of counsel, prosecutorial misconduct, or on the ground that the sentence was imposed inconsistently with one of the express stipulations set forth within the Plea Agreement. The Agreement also records Petitioner's understanding that if requested to do so, he would cooperate with the Government. In that event, the Government, in its sole discretion, would determine whether Petitioner had provided substantial assistance and, if so, would seek a downward departure on Petitioner's behalf.

On September 27, 2004, the Court entered an Order under seal directing that Petitioner's case be scheduled for a closed Plea and Rule 11 Hearing, and that a copy of the Government's Ex-parte Motion be provided to Petitioner and opposing counsel. (Case No. 5:03CR37-14-V, document # 223).

On October 4, 2004, Petitioner appeared before the Court, filed a Financial Affidavit and asked the Court to appoint replacement counsel. (Case No. 5:03CR37-14-V, document # 228). On October 15, 2004, the Court entered an Order appointing replacement counsel for Petitioner. (Case No. 5:03CR37-14-V, document # 233).

4

On November 2, 2004, the Court conducted Petitioner's Plea and Rule 11 Hearing. At the outset of that proceeding, the Court placed Petitioner under oath and discussed with him the fact that he had entered into his Plea Agreement with the assistance of his original attorney. (Transcript of Plea and Rule 11 Hearing 2-3, filed July 26, 2006, document # 383). In response to the Court's initial questions, Petitioner advised that he had spoken to his new attorney about the Agreement; that based upon those conversations, he had no reason to believe that there was anything incorrect or unsupportive in his Agreement; and that based upon the advice and consultation of his current and former attorneys, he wished to proceed with his Plea Agreement and guilty plea. (Plea Tr. 3).

Thereafter, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily made. By his responses to the Court's numerous questions, Petitioner established that he had received a copy of the Indictment and had discussed it with counsel; and that he understood the Court's explanation of the charge and its elements. (Plea Tr. 5-7). Moreover, Petitioner's answers established that he understood he was facing a statutory **mandatory minimum term of ten years** up to life imprisonment. (Plea Tr. 8). Petitioner also told the Court that counsel had spoken with him about how the Sentencing Guidelines might apply in his case; that

5

he understood the Court would not be able to determine his sentence until after his Pre-Sentence Report was prepared; that he understood in some circumstances, he could receive a sentence that was different from that called for by the Guidelines; and that he understood even if he received a sentence which was more severe than the Government's recommendation, such fact would not have given him the right to withdraw his guilty plea. (Plea Tr. 10-12).

Petitioner's answers further established that he carefully had reviewed his Plea Agreement with counsel and understood the terms of that Agreement; that he understood his rights to plead "not guilty" and proceed to trial; that by entering guilty pleas, he was waiving his right to trial; that he had taken enough time to discuss possible defenses with counsel; that he freely was tendering a guilty plea because he, in fact, was guilty of the subject offense; that no one had made him any promises of leniency or a light sentence in order to induce his guilty pleas; that no one had threatened, intimidated, or otherwise forced him into pleading guilty; and that he agreed to the terms set forth in his Agreement, including the provisions relating to his post-conviction waiver and the terms of his ability to cooperate. (Plea Tr. 12-21).

Last, Petitioner's answers established that he was satisfied with the services of his current attorney, and there was nothing

about his former attorney's representation that gave him any hesitation about entering his guilty plea; that his mind was clear and he fully understood what he was doing; that he wanted the Court to accept his guilty plea; and that he had no questions or comments for the Court, and no hesitation with going forward with his guilty plea. (Plea Tr. 22-23). Thus, at the conclusion of that proceeding, the Court accepted Petitioner's guilty plea. (Plea Tr. 22).

On April 18, 2005, the Government filed a Motion for a Downward Departure under U.S. Sentencing Guidelines § 5K1.1 reporting that Petitioner had provided substantial assistance. (Case No. 5:03CR37-14-V, document # 296). Therefore, the Government asked the Court to reduce Petitioner's Offense Level from 31 (with Criminal History Category III, yielding 135 to 168 months imprisonment) down to level 28 (yielding a range of 120 to 121 months imprisonment)[1], and to impose a term of 120 months imprisonment.

Also on April 18, 2005, the Court held Petitioner's Factual

---

[1] The Government's Motion for Downward Departure erroneously reported that Offense Level 28, Criminal History Category III yields a range of 120 to 135 months imprisonment when it actually yields a range of 97 to 121 months imprisonment. However, because the Government's Motion was made pursuant to § 5K1.1 and did not seek a reduction below any applicable statutory minimum terms, Petitioner still faced a statutory mandatory minimum 10-year term of imprisonment. See Melendez v. United States, 518 U.S. 120, 126 (1996) (finding that a motion made by the government under §5K1.1 does not vest the district court with authority to depart below the statutory mandatory minimum term); and United States v. Johnson, 393 F.3d 466, 470 n.4 (4th Cir. 2004) (applying Melendez and finding that "a §5K1.1 motion does not allow the court to depart below the statutory minimum sentence."). Therefore, the newly calculated range's 97-month starting point had to be replaced with the mandatory 120-month term, thereby yielding a range of 120 to 121-months imprisonment.

7

Basis and Sentencing Hearing. On that occasion, the Court fully adopted the Pre-Sentence Report, including its initial calculation of Petitioner's sentencing range at 135 to 168 months. (Sentencing Hearing Transcript 4, filed July 20, 2006, document # 381). However, the Court also granted the Government's § 5K1.1 Motion and reduced Petitioner's Offense Level by three points. (Sent'g. Tr. 6).

Thereafter, defense counsel asked the Court to impose the 120-month term for which the Government was asking. (Sent'g. Tr. 5-6). Petitioner then apologized for his actions, noting that officers from the Caldwell County Sheriff's Department had treated him well. (Sent'g. Tr. 6). Ultimately, the Court sentenced Petitioner to the statutory mandatory minimum term of 120 months imprisonment. (Sent'g. Tr. 6). The Court's original Judgment was filed on May 18, 2005, and its Amended Judgment was filed on June 29, 2005. (Case No. 5:03cr37-14-V, document ## 310 and 329, respectively).

Petitioner did not directly appeal his case. Rather, on April 13, 2006, Petitioner filed the instant Motion to Vacate alleging only that he was subjected to ineffective assistance of counsel by his first attorney's erroneous advice that Petitioner not give investigating authorities any information which implicated Flaherty and Edmisten; and that Petitioner heeded that bad advice and lost his opportunity to secure a greater sentence

reduction under § 5K1.1 (document # 1).

On August 21, 2006, the Government filed its Answer and Motion for Summary Judgment (document ## 10 and 11). Such documents contend that Petitioner is not entitled to any relief on his claim because the record, including the Affidavit from his first attorney, reflects that counsel never attempted to prevent Petitioner from informing on Flaherty or Edmisten.

Furthermore, the Government argues that it is entitled to a judgment as a matter of law because: (1) the sworn statements which Petitioner made during the course of his trial-court proceedings are contrary to the instant allegation and, as such, stand as an impediment to his belated claim that his first attorney prevented from fully cooperating; and (2) in any event, Petitioner was represented by replacement counsel –- with whom he took no issue -- at the time that he entered his guilty plea and prior to the time that he was sentenced, therefore, Petitioner had ample opportunity to provide additional cooperation to authorities had he desired to do so.

In reply, Petitioner curiously argues that "[a]s a general rule, the government motions and affidavits cannot be held conclusive against [him]." See Petitioner's Traverse to Government's Response and Motion to Amend, filed October 27, 2006 (document # 16). Petitioner also argues that he should be permitted to amend his Motion "so that his claim can be judged upon

the full record and testimony of Petitioner in an evidentiary hearing." Id. Upon careful reading of his reply, however, the Court surmises that Petitioner actually is seeking to amend his Motion to Vacate to include a claim that his second, replacement counsel also was ineffective for having failed to inform the Court of his full cooperation -- including his statements against Flaherty and Edmisten -- in order to secure the 97-month term which Petitioner mistakenly believes was available to him by virtue of the Government's § 5K1.1 Motion.

Notwithstanding the potential merit of such proposed claim, the law concerning the amendment of a Motion to Vacate is well settled. Although the provisions set forth in Rule 15 of the Federal Rules of Civil Procedure generally control the question of amendment, such Rules are further qualified by the provisions relating to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA" hereafter). In particular, the AEDPA requires that all claims which collaterally attack a conviction or sentence be brought within one year of the time that such underlying conviction and sentence became final.

In the instant case, Petitioner did not directly appeal his case; therefore, his conviction and sentence became final on or about July 13, 2005, that is, shortly after the Amended Judgment was filed. Consequently, Petitioner had up to and including July 13, 2006 in which to bring all of his collateral challenges to

10

this Court's attention.  Although he filed his original Motion to Vacate before the expiration of his one-year limitations period, the instant proposed claim was not asserted until well after the expiration of that period, on October 27, 2006.  Furthermore, Petitioner's mere recitation of Rule 15 falls far short of establishing that his claim is not time-barred; therefore, the Court had to determine for itself whether the claim could be construed as relating back to Petitioner's timely-filed claim so as to entitle him to a review on the merits of such claim.  See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (noting that an otherwise time-barred claim can be rendered timely if such claim "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading.").

Petitioner's original claim alleges that his first attorney was ineffective during the time that he represented Petitioner prior to the entry of his guilty plea because counsel advised him not to fully cooperate with authorities, and that such advice eventually kept him from receiving a greater reduction.  By his proposed claim, Petitioner alleges that he actually did fully cooperate, but his second attorney failed to bring that cooperation to the Court's attention in order to secure the 97-month term that he could have received pursuant to the Government's request for a three-point reduction in his Offense Level. However, the law is clear that only those matters which arise

11

from occurrences which are similar as to both time and type can be deemed to relate back under Rule 15(c). United States v. Craycraft, 167 F.3d 451, 456-57 (8th Cir. 1999). Indeed, in Craycraft, the case upon which Petitioner relies, the Court expressly found that claims that counsel was ineffective for failing to file an appeal did not relate back to original claims that counsel had been ineffective for failing to seek a downward departure and for failing to object to the type of drugs at issue).

Thus, even when Petitioner is given the benefit of all conceivable doubts, the Court must conclude that his proposed claim against replacement counsel simply does not relate back to his original claim against his first attorney. Therefore, Petitioner's Motion to Amend must be denied because his second claim is time-barred. Furthermore, the Court carefully has reviewed the instant pleadings along with the underlying record and determined that Petitioner is not entitled to any relief on his original claim.

## II. ANALYSIS

### 1. Petitioner's claim that his first attorney prevented him from fully cooperating and receiving a greater sentence reduction is wholly belied by the record.

Petitioner contends that his first attorney erroneously advised him not to inform the Government on two of counsel's friends, David Flaherty and Butch Edmisten; and that such

12

erroneous advice prevented Petitioner from securing a greater sentence reduction for himself.

With respect to claims of ineffective assistance of counsel, Petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields</u>, 956 F.2d at 1297-99; <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977).

Under these circumstances, Petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697. Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v.</u>

13

Fretwell, 506 U.S. 364, 369 (1993).

More critically, inasmuch as Petitioner has alleged ineffective assistance of counsel following the entry of his guilty plea, he has a different burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit described a petitioner's burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59-60; and Fields, 956 F.2d at 1297. Critically, however, if a petitioner fails to meet his burden of demonstrating prejudice, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Thus, "the central inquiry" is whether, but for counsel's alleged errors, this Petitioner would have insisted on a trial. Slavek v. Kinkle, 359 F.Supp.2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffectiveness on prejudice prong based on petitioner's failure and inability to argue that but for alleged errors, he would have insisted on going to trial).

14

Courts have stated that this inquiry is an "objective one based on whether going to trial might reasonably have resulted in a different outcome." Martin v. United States, 395 F.Supp. 2d 326, 329 (D. S.C. 2005). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); and Burket v. Angelone, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).

Turning back to Petitioner's Motion, the Court first notes that although Petitioner claims that his attorney gave him erroneous advice, he does not assert or even suggest that but for that bad advice, he would have pled "not guilty" and proceeded to trial in this matter. As such, Slavek makes it clear that Petitioner's Motion is doomed on that ground alone.

Second, and perhaps most critically, it has not escaped the Court's attention that the problems which Petitioner had with his retained counsel occurred prior to the time that he entered his guilty plea and prior to the time that replacement counsel was appointed. Notwithstanding that timing, the record contains Petitioner's sworn assurances that he believed the assistance which he received from both of his attorneys was satisfactory and he had no reservations about proceeding under his Plea Agreement with his guilty plea. (Plea Tr. 2-3). Indeed, during his Plea

15

Hearing when the Court asked Petitioner whether he had any questions or comments to make, or whether he had any hesitation with going forward, he expressly indicated that he had none. (Plea Tr. 22-23). In this case, therefore, the well-settled principle of waiver is applicable to this allegation. That is, the law is clear that a "voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations," Fields, 956 F.2d at 1294, citing Tollett v. Henderson, 411 U.S. 258, 266-67 (1973).

Moreover, even if Petitioner had not waived his right to raise this claim by entering his guilty plea, such claim still would have to be rejected because his sworn statements, taken as a whole, tend to negate the claim. That is, in addition to the foregoing statements ultimately expressing satisfaction with his attorneys, Petitioner did not express any concern about his retained attorney's advice even after he became aware that the Government was seeking a 120-month sentence for his cooperation. Rather, when Petitioner addressed the Court during allocution, he merely apologized for his misconduct and commented that he had been treated well by a local sheriff's department. (Sent'g. Tr. 6).

Thus, the Court finds appropriate the application of an equally well-settled principle that when evaluating post-guilty plea claims of ineffective assistance, statements previously made

16

under oath are deemed binding in the absence of "clear and convincing evidence to the contrary." <u>Fields</u>, 956 F.2d at 1299, <u>citing</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74-75 (1977). Such statements "constitute a formidable barrier" to their subsequent attack. <u>Blackledge</u>, 431 U.S. at 73-74. In sum, therefore, even if Petitioner could side-step his waiver, he has failed to establish that his sworn statements of contentment with counsel now should be disregarded.

Third, the Court has observed that while Petitioner initially alleged that he followed counsel's bad advice to his own detriment, he subsequently contradicted that allegation. Specifically, in his Traverse, Petitioner unequivocally states that he actually provided the Government with information about "former District Attorney David Flaherty" and he also "gave information on the friend of Flaherty . . . Butch Edmisten." Consequently, Petitioner's more recent assertion tends to single-handedly defeat his claim by showing that even if counsel gave the subject erroneous advice, Petitioner was not prejudiced because he disregarded that advice and, instead, provided the subject information in an attempt to further help himself at sentencing.[2]

---

[2]In fact, part of the argument which Petitioner made in support of his proposed amended claim is that his second attorney should have directed the Court's attention to Petitioner's cooperation against Flaherty, Edmisten and others, in order to secure the 97-month sentence for which Petitioner believes the Government's § 5K1.1 motion made him eligible. However, as was already noted, this claim does not relate back to Petitioner's original claim against his first attorney; therefore, it is time-barred.

17

Last on this claim, the Court also is persuaded by the Government's argument that for nearly six months prior to the time he was sentenced, Petitioner was represented by replacement counsel.  Yet, Petitioner neither complains that replacement counsel dissuaded his full cooperation, nor does he attempt to explain why he did not provide whatever additional cooperation he believes he could have offered during that six-month period.  Consequently, the Court finds that Petitioner's claim that his retained attorney caused him to lose out on a greater reduction under §5K1.1 must flatly be rejected.

   2. **Petitioner's two remaining Motions also will be denied**.

   On March 7, 2007, Petitioner filed a Motion for Ruling on the Pleadings and/or Motion Day (document # 17), asking that the Court "expedite the proceedings and order an [sic] prompt evidentiary hearing" for his case.  Then, on April 20, 2007, Petitioner filed a Motion for Evidentiary Hearing (document # 18), reiterating his request for a hearing in this matter.

   Under the law, a petitioner in a § 2255 proceeding is entitled to an evidentiary hearing in order to resolve disputed issues of material fact when such issues raise "a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ."  Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992) (internal quota-

tion marks and citation omitted). However, a hearing must be denied if the petitioner's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently false or frivolous as to warrant summary dismissal. See Blackledge, 431 U.S. at 76; United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988).

As the Court has articulated, Petitioner's claim is factually and/or legally baseless. Accordingly, the Court finds that he is not entitled to an evidentiary hearing as there is no disputed issue of material fact which requires resolution.

### III. CONCLUSION

The Court has considered the parties' arguments, the entire record of this matter and the relevant legal precedent, and has found that Petitioner is not entitled to any relief. Therefore, the Government's Motion for Summary Judgment must be granted and Petitioner's Motion to Vacate must be denied.

### IV. ORDER

**IT IS, THEREFORE, ORDERED THAT:**

1. Petitioner's Motion to Amend (document # 16) is **DENIED;**

2. Petitioner's Motion for Ruling on the Pleadings and/or Motion Day (document # 17) is **DENIED;**

3. Petitioner's Motion for an Evidentiary Hearing (document # 18) is **DENIED;**

4. The Government's Motion for Summary Judgment (document #

11) is **GRANTED;** and

    5.   Petitioner's Motion to Vacate is **DENIED.**

**SO ORDERED.**

Signed: March 13, 2009

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge